## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                Case No. 04-81008-DHW
                                                     Chapter 7
DANNY LAM,

    Debtor.
_____

ANNABELLE TSUI,

    Plaintiff,
v.                                                   Adv. Proc. No. 04-81008-DHW

DANNY LAM,

    Defendant.

### MEMORANDUM OPINION

Annabelle Tsui filed a complaint to determine the dischargeability of her claim against Danny Lam pursuant to 11 U.S.C. § 523(a)(6).[1] Trial was held in Opelika, Alabama on October 19, 2005. Tsui appeared *pro se*, and Lam appeared through his attorney, Roger W. Pierce.

### Jurisdiction

The court's jurisdiction in this adversary proceeding is derived from 28 U.S.C. § 1334 and from the United States District Court for this district's general order referring all title 11 matters to this court.

---

[1] Tsui's complaint included a count for denial of Lam's discharge for failure to maintain adequate records. At trial, however, Tsui expressly abandoned any claim under 11 U.S.C. § 727.

Further, because a complaint to determine the dischargeablity of a particular debt is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), this court's jurisdiction extends to the entry of a final order or judgment.

## Findings of Fact

Tsui and Lam are former spouses. Prior to their marriage, Lam owned a home in Nepean, Ontario, Canada. One of Lam's relatives held a mortgage on the home.

Sometime after the parties' marriage, the Ontario house was sold. Lam's relative, however, was not paid from the sale proceeds. Instead, the relative agreed to release the mortgage in exchange for Lam's executing an unsecured, promissory note for $100,000.

Most, if not all, of the proceeds from the sale of the Ontario home were reinvested in another home in New Jersey. Later, the New Jersey home, too, was sold, and Lam and Tsui purchased a home at 355 Estate Avenue, Auburn, Alabama, again reinvesting most of the sale proceeds from the prior residence.

Tsui and Lam were divorced in the late 1990s.[2] In the divorce proceeding Tsui was awarded the home in Auburn.

In March 2001 Lam filed suit against Tsui claiming defamation.[3] In connection with that lawsuit, Lam recorded a notice of lis pendens on May 8, 2001 in the Lee County Probate Court records wherein he indicated particularly that the lawsuit may affect Tsui's interest in the

---

[2] The exact date of the divorce is not a part of the evidence in this case.

[3] It appears that the suit was commenced in Montgomery County but later transferred to the Circuit Court of Lee County, Alabama.

Auburn home.  As a result of the lis pendens, Tsui lost at least one opportunity to sell the property.[4]

Tsui filed a counterclaim alleging 1) false charges and allegations to gain litigation opportunity, 2) emotional distress, 3) assault and battery, 4) defamation, 5) general negligence, 6) slander of title, and 7) mental anguish, emotional distress, and embarrassment.

On January 23, 2002 Lam filed a chapter 11 bankruptcy petition in this court (Case No. 02-80130).  The filing of the bankruptcy case stayed Tsui's State court counterclaim.  On May 30, 2002 this court granted Tsui's motion for relief from stay to permit the continuation of Lam's State court defamation action and Tsui's counterclaim.  On August 7, 2002 Lam's chapter 11 case was dismissed.[5]

On August 30, 2002, noting that Lam's defamation action did not involve real estate owned by Tsui, the Lee County Circuit Court ordered the lis pendens removed from the Lee County Probate Court records.

On January 15, 2003, the Lee County Circuit Court granted Tsui's motion for summary judgment on Lam's defamation claim and dismissed his complaint.

Tsui's counterclaim proceeded to a jury trial where on May 17, 2004  Tsui was awarded a $35,000 judgment against Lam.  The jury's verdict, however, was a general one and did not specify which count or counts on which Tsui had prevailed.  Neither did the general verdict

---

[4] Once the lis pendens was removed, Tsui was able to sell her house for a profit.  The evidence, however, does not establish the particulars of the sale.

[5] The chapter 11 case was dismissed on the bankruptcy administrator's motion because Lam had failed to timely file a plan, disclosure statement, and regular monthly reports of receipts and expenses.

3

allocate the damages to particular counts of the counterclaim.

On July 16, 2004, Lam filed the instant chapter 7 bankruptcy petition for relief.

Tsui testified that since the parties' divorce, Lam has undertaken numerous malicious and vindictive actions calculated to cause her harm. In particular, Tsui contends that Lam made unfounded allegations of Tsui's criminal activity to the United States attorney and to the State district attorney. Further, Lam made unfounded allegations of Tsui's child abuse to the Alabama Department of Human Resources. Lam filed the frivolous defamation suit against Tsui and an unwarranted lis pendens. Tsui contends that the lis pendens was filed in order to prevent her moving from the area. Finally, according to Tsui, Lam filed two bankruptcy cases to thwart prosecution of her counterclaim and the enforcement of her judgment.

Tsui's testimony is corroborated in part by the findings of the Lee County Circuit Court, Domestic Division. The court wrote:

> "The Court finds that many of the allegations of Defendant [Lam] in support of several motions filed herein were in fact frivolous in nature. That it appears to the Court and the Court is of the opinion that many of Defendant's complaints against his former wife (Plaintiff) were without basis; and even when confronted with impartial testimony to the contrary from independent sources, that the Defendant completely disregarded the same; not only does the Court find that many of the allegations and opinions of the Defendant which are the basis of his unreasonable demands and requests are in fact ludicrous, but his stubborn insistence in the face of evidence to the contrary, **indicate a root of bitterness and vindictiveness towards his former wife**."

*See* Plaintiff's Exhibit 6 (emphasis added).

Conclusions of Law

Tsui contends that Lam willfully and maliciously injured her or her property by filing a notice of lis pendens against her Auburn home. In order to prevail, Tsui must prove each element of 11 U.S.C. § 523(a)(6) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

Under 11 U.S.C. § 523(a)(6), a debt for willful and malicious injury is not dischargeable in bankruptcy. The exact text of the statute provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

The Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998) addressed the willful and malicious injury exception of § 523(a)(6). The Court concluded that in order for the discharge exception to apply the resulting injury must be both willful and malicious.

"Willful" means deliberate or intentional. *Id*. at 61 n.3. Further, the Court held that " . . . nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury." *Id*. at 61. Finally, willful does not encompass a recklessly or negligently inflicted injury. *Id*. at 64.

Tsui has proven by a preponderance of the evidence that Lam

willfully injured her or her property by filing a lis pendens notice in connection with his defamation suit. Not only was the act of filing the lis pendens notice deliberately and intentionally undertaken, but further, Lam filed the lis pendens notice with the intent to injure Tsui. The court is convinced that Lam was motivated either by his bitterness and vindictiveness toward Tsui or by his desire to prevent her selling the home and leaving the immediate area. In either event, Tsui has proven that Lam's filing of a lis pendens notice was done with the intent to deliberately injure her or her property.

"Malicious" means "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995) (quoting *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989)).

Alabama law requires the filing of a notice of lis pendens only in conjunction with civil actions that affect an interest in land. The Code provides:

> (A) When any civil action or proceeding shall be brought in any court to enforce any lien upon, right to or interest in, or to recover any land, or where an application has been made to the probate judge of any county for an order of condemnation of land, or any interest therein, the person, corporation or governmental body commencing such action or proceeding or making such application shall file with the judge of probate of each county where the land or any part thereof is situated a notice containing the names of all of the parties to the action or proceeding, or the persons named as those having an interest in the land in the application for an order of condemnation, a description of the real estate and a brief statement of the nature of the lien, writ, application or action sought to be enforced.

*Ala. Code* § 35-4-131 (1975). See *First Alabama Bank v. Brooker*, 418

So. 2d 851 (Ala. 1982)(section 35-4-131 establishes the procedure for filing notice of lis pendens when any civil action is brought to enforce any right to, or interest in, land).

In the divorce proceeding Tsui was awarded all interest in the couple's Auburn home. Lam retained no right or interest in that realty irrespective of the fact that his relatives had once held a mortgage on his home in Canada and the equity from the sale of that home ultimately was invested in the Auburn realty. Hence, Lam's civil action against Tsui for defamation had nothing whatsoever to do with enforcement of his rights or interests in the Auburn realty. Therefore, Lam's filing of a notice of lis pendens was wrongful under law.

This court must also consider the effect of Tsui's State court judgment upon this adversary proceeding. The principles of collateral estoppel apply to dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284-85 n.11, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991);[6] *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (1993).

Under Alabama law,[7] the doctrine of collateral estoppel precludes

---

[6] Although the validity of a creditor's claim is determined by rules of state law, the issue of nondischargeability is governed by the terms of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 283-284, 111 S. Ct. 654, 657-658 (1991) (citing *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161, 67 S. Ct. 237, 239, 91 L. Ed. 162 (1946) and *Brown v. Felsen*, 442 U.S. 127, 129-130, 136, 99 S. Ct. 2205, 2208-09, 2211, 60 L. Ed. 2d 767 (1979)). Nevertheless, bankruptcy courts must "give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge[ability] and which were actually litigated and determined in the prior action." *Grogan,* 498 U.S. at 284 (citing Restatement (Second) of Judgments § 27 (1982)).

[7] "If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." *St. Laurent v. Ambrose (In re St. Laurent)*,

7

relitigation of an issue where 1) the issue is identical to an issue litigated in a prior proceeding; 2) the issue was actually litigated in the prior proceeding; 3) resolution of the issue was necessary to the prior judgment; and 4) the parties in the present proceeding are the same as the parties in the prior proceeding. *Lott v. Toomey,* 477 So. 2d 316, 319 (Ala. 1985).

This court, however, is not bound by the prior State court judgment because the jury's verdict for Tsui was general and Tsui's counterclaim contained at least one count that would not be actionable under § 523(a)(6). Tsui was awarded a judgment against Lam for $35,000 on her counterclaim. The counterclaim contained a count for "general negligence." Hence, it is impossible for this court to determine whether or not Tsui prevailed in State court with respect to her slander of title count, which is the basis for this dischargeability proceeding. Therefore, the State court judgment does not satisfy all of the elements required to invoke the doctrine of collateral estoppel with respect to this adversary proceeding.

Because the doctrine of collateral estoppel does not give preclusive effect in this court to Tsui's judgment, it does not prevent her from relitigating for dischargeability purposes the issue of slander of title in this court.

Having found that Lam's wrongful filing of the lis pendens notice constituted a willful and malicious injury to Tsui, the court must conclude that a part or all Tsui's claim against Lam is nondischargeable. Tsui suffered an injury as a result of Lam's willful and malicious act. However, the evidence is insufficient for this court to liquidate the resulting damages.

The wrongful lis pendens notice clouded the title to Tsui's home for over a year. The lis pendens notice cost her at least one

---

991 F.2d 672, 675-76 (11th Cir. 1993).

8

opportunity to sell her home.[8]  Further, Tsui incurred expense in getting the notice removed.

However, that injury does not necessarily correlate to the $35,000 judgment that she was awarded in State court.  As discussed *supra*, the general verdict of the State court jury prevents the assignment of damages to any particular count of the seven counts enumerated in Tsui's counterclaim.  Hence, all this court can do is find that an injury was sustained as a result of Lam's filing the notice of lis pendens and that  Tsui's claim attributable to that injury is nondischargeable under 11 U.S.C. § 523(a)(6).

Conclusion

For the reasons stated herein and pursuant to Fed. R. Bankr. Proc. 9021, a separate judgment will enter holding that the portion of Annabelle Tsui's claim against Danny Lam that is attributable to his slander of title to the Auburn, Alabama realty is NONDISCHARGEABLE.

Done this the 2nd day of November, 2005.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Annabelle Tsui, Plaintiff
   Roger W. Pierce, Attorney for Defendant

---

[8] The fact that Tsui was able to sell the Auburn home for a profit once the lis pendens was removed does not erase the injury she sustained prior to the sale.  In an action for slander of title, damages "may be demonstrated by proof that defendant's disparagement of plaintiff's title . . . 'interrupted, or injuriously affected, some dealing of the plaintiff with his property.'" *Harrison v. Mitchell*, 391 So.2d 1038 (Ala. Civ. App. 1980).